## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

JAMES ANTWOHN GREEN and
TYRESS DONTAE MATHIS,
     Plaintiff,

v.

OFFICER LATAEVIAS JACKSON, in
his individual and professional capacity,
et al.,

     Defendant.

Case 1:21-cv-00168-LAG

## Plaintiffs' Response to the Defendant Jackson's 12b Motion to Dismiss

Comes now Plaintiffs by and through Attorneys of Record C. Victor Long, Esq. and Kamau K. Mason, Esq. and provides this response to Defendant Jackson's 12b Motion to Dismiss.  The Plaintiffs note to the Court that the facts pled within the complaint rise above the level of obscurity and should move forward into discovery and the Plaintiff shows as follows:

### I.  Statemen of Facts

On  08/21/ 2019 The Albany police received an emergency call concerning a shooting at 100 block of Lotus Dr.2007 E. Oglethorpe Blvd.   Upon their arrival they learned that a black male had been shot and was bleeding from the head. Upon further examination they learned that the victim's name was Darrius Battle. The Officers observed surveillance cameras in the area where the victim reported

1

that he had been shot.  The Officer Lataevia Jackson viewed the feed on the surveillance cameras in the area of the incident. Officer Jackson did not see either of the Plaintiffs on the Surveillance footage.  The victim was taken to Phoebe Putney Memorial hospital.

On 8/22/2019 Officer Billsby went to the hospital and got consent to do a GRS on Darrius' hands. While at the hospital, Officer Billsby learned from Darrius that the guys who shot him had taken a picture together and it was on FaceBook.  In the present of Officer Billsby, Darrius pulled up several pictures on FaceBook on Officer Billsby's cell phone.  Darrius went to Kevius Anderson's FaceBook page and pointed out three men he said was in the vehicle during the shooting.Then Darrius said," Yes that look just like them, they all looked liked crack heads"

Darrius told Officer Billsby that he did not know the guys that shot him, but Kevius would know them because they were all GD'.  Officer Billsby logged the information he received from Darrius in evidence locker #2 and the conversation with Darrius was recorded.  On August 27, 2019, Officer Jackson learned from his canvassing the Facebook pictures that Darrius had pointed out, that the pictures Darrius identified were Tyress Mathis, James Green and Jaquaris Gatlin.      After companion the pictures that Darrius had picked out on FaceBook; Officer Jackson obtained a search warrant for Kevius Anderson's cell phone.  On August 27, 2019, Officer Jackson caused warrants to be taken for the arrest of James Green, Tyress

Mathis and Jaquaris Gatlin; based only on the pictures Battle picked out on
FaceBook.

On August 27, 2019, Officer Jackson prepared A BOLO for James Green,
Tyress Mathis and Jaquaris and sent them to Ms. Banks to be given to the media.
Albany Georgia, Police Department, 201 West Oglethorpe Blvd.  Albany, Georgia
31702.  (229) 431-2100.  FROM: Albany Police Department; Date: August 27,
2019  SUBJECT: Wanted Person (19-113728)

The Albany Police Department's Investigations Division would like to solicit
law enforcement assistance with locating the following person in regards to an
outstanding warrant for a aggravated assault that took place at 100 Loftus Dr. His
last known address is 505 S. Valenica Dr.B/M James Antowhn green  DOB: /87
Height: 5'7  Weight: 130.  Anyone who has information regarding this wanted
person should call Crime Stoppers at (229) 436-TIPS or they can contact one of the
following investigators at (229) 320-0794 or (229) 320-0797.

Officer Jackson issued similar BOLO(s) for Tyress D. Mathis ).  The BOLO(s)
were sent to the WALB TV Station in Albany, Georgia on August 27, 2019.

ALBANY Police put on gloves and formed a triangle formation around Mr.
Lewis.  WALB televised the BOLO(S) on August 27, 2019 at 2:45 PM and again
on August 29, 2019 at 4:38 AM.  The story was reported by Jordan Barela of

WALB.  The televised reporting added to its BOLO "All three suspects are considered armed and dangerous". This description was not listed in the BOLO(s).

On August 27, 2019, Brian Still, after hearing in the news about his son being wanted for aggravated assault; took Tyress to the LEC and surrendered him. While being interviewed by Officer Jackson, Tyress told Jackson that he did not have anything to do with the shooting and that he had been at home all day but for a short trip to the store and he had his cell phone with his all the time.  During the interrogation, Tyress told Jackson that he did not go any place without his phone. He offered his phone to Jackson to PING his location at the time of the shooting incident.  Jackson refused to take Tyress' cell phone to PING his location at the time of the shooting. However, he took Kevius Anderson's cell phone before he got a search warrant to PING his location at the time of the shooting.(exhibit c).

**On October 30, 2019, Officer Jackson contacted Darrius. During that conversation Darrius informed Jackson that he had been trying to get in touch with him.  Darrius told Jackson that James Green, Tyress Mathis and Jaquaris Gatlin were not the guys who shoot him.**

**Darrius told Jackson that he had picked out the wrong guys.  Darrius told Jackson that he had been at the Sand Dunes last week and he had seen the guys that shot him.  After Darrius had told Jackson that the Plaintiffs were**

**not the guys who had shot him; Jackson wrote in his file, "This case will**

**remain active."**

On October 22, 2019, Officer Jackson received the results of Plaintiff James

Green's Facebook pages; from a search warrant he had caused to be issued on

September 26, 2019.  Officer Jackson did not write in his report that he had found

any evidence on James Green's Facebook pages that connected the Plaintiffs to the

shooting incident that occurred on August 21, 2019, where Battle had been shot.

On November 15, 2019, Officer Thomas J. Moore and John Doe Officers

presented themselves at James Green resident at 301 S. Shadowlawn Dr. Albany,

Ga.  Green was arrested without incident.  James Green was taken to and booked

into the Dougherty County jail and was held for 42 days.  Plaintiffs' plead not

guilty from the time they were arrested until their warrants were dismissed.

TYRESS DONTAE MATHIS turned himself into the jail on August 27, 2019

and was under prosecution until his warrant was dismissed on June 23, 2010 .

Both Plaintiffs' warrants were dismissed on June 23, 2020.

II.  Analysis and Citation to Authority

**A.**     **Rule 12(b) Dismissal Standard.**

"To survive dismissal, the complaint's allegations must plausibly suggest that

the [plaintiff] has a right to relief, raising that possibility above a speculative level;

if they do not, the plaintiff's complaint should be dismissed." James River Ins, Co.

v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008) (citing Bell

Atl.Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)); see also Edwards v. Prime,

Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).  The former rule that "a complaint

should be dismissed only if it appears beyond doubt that the plaintiffs can prove no

set of facts which would entitle them to relief," LaGrasta v. First Union Sec., Inc.

358 F. 3d 840, 845, (11th Cir. 2004) – has been retired by Twombly.  James River

Ins. Co., 540 F. 3rd at 1274.  Thus, the Court engages in a two-step approach:

"<u>When there are well placed factual allegations, a court should assume their</u>

<u>veracity and then determine whether they plausibly give rise to an entitlement</u>

<u>relief</u>."  Ashcroft v Iqbal., U.S. 626 (2009).

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a

complaint for, among other reasons, "failure to state a claim upon which relief can

be granted." Fed. R. Civ. P. 12(b)(6). This rule must be read in conjunction with

Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of

the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).

While this pleading standard does not require "detailed factual allegations," Bell

Atlantic Corp. v. Twombly, 544 U.S. 544, 550 (2007), it does demand "more than

an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v.

Iqbal, 556 U.S. —, 129 S. Ct. 1937, 1949 (2009) (citations omitted). A pleading

that offers "labels and conclusions" or "a formulaic recitation of the elements of a

cause of action will not do." [Twombly, 550 U.S., at 555]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557.

To survive a motion to dismiss founded upon Federal Rule of Civil Procedure 12(b)(6), [for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." Id., at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. Id., at 556.

The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a Defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a Defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557 (brackets omitted). Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id., at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual

allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556.

Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.

While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Iqbal, 556 U.S. at —, 129 S. Ct. at 1949-50 (emphasis supplied). While the Eleventh Circuit has long held claims asserted under § 1983 against individual officers to a higher-than-usual standard, in

light of the plausibility requirement as articulated in Iqbal, utilization of this standard is no longer warranted. [Even though] the Iqbal opinion concerns Rule 8(a)(2) pleading standards in general, the Court specifically describes Rule 8(a)(2) pleading standards for actions regarding an unconstitutional deprivation of rights. The defendant federal officials raised the defense of qualified immunity and moved to dismiss the suit under a 12(b)(6) motion. The Supreme Court held, citing Twombly, that the legal conclusions in a complaint must be supported by factual allegations, and that only a complaint which states a plausible claim for relief shall survive a motion to dismiss.

The Court did not apply a heightened pleading standard. While Swann [v. Southern Health Partners, Inc., 388 F.3d 834 (11th Cir. 2004)] , GJR [v. Investments, Inc. v. County of Escambia, Fla., 132 F.3d 1359 (11th Cir. 1998)], and Danley [v. Allen, 540 F.3d 1298 (11th Cir. 2008)] reaffirm application of a heightened pleading standard for § 1983 cases involving defendants able to assert qualified immunity, we agree . . . that those cases were effectively overturned by the Iqbal court. Pleadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense shall now be held to comply with the standards described in Iqbal.

A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth-legal

conclusions must be supported by factual allegations. The district court should assume, on a case-by-case basis that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief. Randall v. Scott, 610 F.3d 701, 709-10 (11th Cir. 2010) (emphasis supplied).

Further, the Eleventh Circuit has regularly reiterated that district courts have a "supervisory obligation" to ensure that complaints comply with the requirements of Federal Rules of Civil Procedure 8 and 10. Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1275 (11th Cir. 2006). This includes ensuring that plaintiffs link the claims they make to the relevant factual predicates upon which those claims are premised with sufficient specificity to permit defendants (and courts) to comprehend the nature of the allegations their complaints contain. E.g., Lampkin-Asam v. Volusia County School Bd., 261 Fed. Appx. 274, 277 (11th Cir. 2008) ("[W]e have recently observed that district courts have a 'supervisory obligation,' under Rule 12(e), to sua sponte direct a plaintiff to better plead his complaint 'when a shotgun complaint fails to adequately link a cause of action to its factual predicates.' ") (quoting Wagner, 464 F.3d at 1275).

So-called "shotgun" pleadings ignore the requirements of Federal Rule of Civil Procedure 8(a) that a complaint contains a short and plain statement of the claim demonstrating entitlement to relief. Fed. R. Civ. P. 8(a)(2). They also completely disregard Rule 10(b)'s requirement that discrete claims should be pled in separate

counts. Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001); see also Roe v. Aware Woman Center for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001).

As noted above, when confronted with such a pleading that might otherwise contain sufficient factual allegations to state a claim, but in the absence of a motion for more definite statement, courts are under a duty to, sua sponte, order the complaint repled before resorting to more drastic measures, such as dismissal. See, e.g., Wagner, 464 F.3d at 1273 (reversing dismissal of a shotgun complaint, stating that the "proper remedy was to order repleading sua sponte"); Byrne v. Nezhat, 261 F.3d 1075, 1133 (11th Cir. 2001) (discussing district courts' "duty" to order a shotgun complaint repled as an initial matter, reserving dismissal as a sanction for noncompliance with such an order).

Here, the Plaintiff has presented well plead, factual allegations [pursuant to Iqubal] The Court should, therefore, refrain from dismissing the matter sua sponte. Additionally, the Complaint contained factual allegations, noted dates, times and names of each of the actors who hold an element of responsibility and liability for the torts alongside the John Doe element which sits in place in case other [actors] are discovered in the course of discovery.

**B.** **Public Policy Argument Against Immunity as a Precursor for Dismissal**

Finally, the Defendants rely upon Official and Qualified Immunity and its protections as if it is impossible for an educator or state actor to pierce the veil of

immunity.  **However, the veil of protection afforded state workers though immunity can be pierced if the acts of the tort feasors are malicious, breach ministerial duties or show that there is a culture that exists allows for the detriment of the rights of the victims**. Id.  The Plaintiff has alleged such facts in his complaint and must be allowed discovery in order to flesh out those details. Immunity is not a catch all rebuttals to a lawsuit filed against state employees. And the caselaw noted in the below analysis provides insight for the Court.

Under the circumstances and details of the complaint, the Court can conclude that there are sufficiently plead facts, under Georgia Supreme Court Law, that allow for relief.  The Court should, therefore, allow the Plaintiffs' claim to move forward into discovery because to preclude discovery based upon the Defendants' assertion of immunity in the face of factually plead allegations would violate the Plaintiff's rights under both the Georgia Constitution and the United States Constitution.

Further, The Defendants have previously cited to cases, which universally hold in order for Plaintiffs to overcome Defendants' official immunity, <u>they would need to show that Defendants carried out the above discretionary acts with actual malice or intent to harm the Plaintiff.</u>  In order to show that the Defendant(s) did in fact breach their respective ministerial duties, the case would be required to proceed through the course of discovery.

Citing Hackett v. Fulton County School Dist., 238 F. Supp. 2d 1330 - Dist. Court, ND Georgia 2002, which provides a clear litmus test for malice, states: "With respect to the claims made against him in his individual capacity, Jones argues that he is entitled to official immunity. Whereas sovereign (governmental) immunity applies to bar tort claims against counties and their employees acting in their official capacities, **official immunity, as recognized under Georgia law, offers limited protection to public officials and employees from tort claims against them in their individual capacities**. *See* Woodard v. Laurens County, 265 Ga. 404, 406, 456 S.E.2d 581, 583 (1995); Gilbert, 264 Ga. at 750, 452 S.E.2d at 481. County employees are protected from suits against them in their individual capacities for discretionary acts performed within the scope of their public duties, as long as those discretionary acts were performed "without malice." *See* Coffey v. Brooks County, 231 Ga.App. 886, 888, 500 S.E.2d 341, 345 (1998), *rev'd on other grounds,* Rowe v. Coffey, 270 Ga. 715, 715-716, 515 S.E.2d 375 (1999). **The Georgia Constitution provides that no official immunity is provided, however, for "ministerial acts negligently performed or for ministerial or discretionary acts performed with malice or an intent to injure."** Woodard, 265 Ga. at 406, 456 S.E.2d at 583 (quoting 1991 amendments to the Constitution); Gilbert, 264 Ga. at 752, 452 S.E.2d at 482-483; Brown, 226 Ga.App. at 802, 487 S.E.2d at 515.

And finally, the Court should not be convinced by the Defendant to dismiss the claims in the immediate case at BAR through the use of the 12(b) legal concept through the use of caselaw that was decided in the Summary Judgment stage of litigation.

**A. Sovereign Immunity Does Not Bar Plaintiffs' Claims against Defendants in Their Official Capacity if there Exists a Breach of Ministerial Duties or a Malice on the Part of the Defendants Acting Under Color of Law.**

The Defendants assert sovereign immunity as a defense to claims arising from the conduct of officials.  But again, proof of those concepts can only come through discovery and should not be precluded by 12(b) dismissal.

Under the Georgia Constitution:  **Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions.**

Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them for the performance or nonperformance of

their official functions.  The provisions of this subparagraph shall not be waived. Ga. Const. of 1983, Art. I, Sec. II, Par. IX(d) (as amended 1991).

Moreover, a local government body can be held liable for a tort that that causes damage to a plaintiff when execution of a government's policy or custom inflicts the injury.  Carter v Dekalb County Ga., 521 F. App'x 725, 728 (11th Cir. 2013) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  Accordingly, "the plaintiff has the burden to show that a deprivation of constitutional rights occurred as a result of official government policy or custom."  Cooper v. Dillon, 403 F.3d 1208, 1221 (11th Cir. 2005).

There are three ways to show a governmental policy or custom: <u>(1) an express policy; (2) a widespread practice so permanent and well settled as to constitute a custom</u>,; or (3) the act or decision of a municipal official with final policy making authority, (such as a principal or Principal).  Cuesta v. Sch Bd. Of Miami-Dade Cnty., 285 F.3d 962, 966-68 (11th Cir. 2002).

**<u>Plaintiff Has  Alleged Sufficient Facts to Establish Liability Against the Defendants  Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).</u>**

Monell as it is interpreted in Grech v. Clayton Cty. Ga. states that plaintiffs have three methods by which to establish liability in order to prevail against a school official: identify (1)  an officially promulgated district policy authorizing

15

the conduct at issue; (2) <u>identify an official custom or practice of the school district</u> <u>shown through the repeated acts of district officials,</u>; or (3) identify a single act or decision of <u>an official with final policy making authority in the area of the act</u> or decision authorizing or approving the conduct; <u>that person also being Principal</u> <u>Toney</u>. 335F.3d 1326, 1329 (11th Cir. 2003); Cuesta v. Sch. Bd. Of Miami-Dade Cnty., Fla., 285 F.3d 962, 968 (11th Cir. 2002).

However, the Supreme Court's holding does not restrict the Plaintiff to the requirement of finding a decision maker or policy maker at the school board or legislative level; rather noting that "<u>when execution of a government's policy or</u> <u>custom, whether made by its lawmakers or by those whose edicts or acts may fairly</u> <u>be said to represent official policy,</u> inflicts the injury that the government, as an entity, is responsible." Id. Therefore, if the Plaintiff can produce evidence that the defendants acted in a malicious manner that was an undocumented policy. But as stated, those set of facts are, in themselves, discoverable. Id.

B. **<u>ALL CLAIMS AGAINST DEFENDANTS IN THEIR PERSONAL AS</u>** **<u>WELL AS OFFICIAL CAPACITIES SHOULD REMAIN & DO NOT</u>** **<u>FAIL AS A MATTER OF LAW</u>**.

Georgia law provides official immunity as protection for public officials sued in their individual capacities. Ga. Const. art. I, § 2, ¶ IX (d); Johnson, 311 Ga. App. at 872, 717 S.E.2d at 276. This doctrine "protects individual public agents from

personal liability for discretionary actions taken within the scope of their official authority, and done without willfulness, malice or corruption." Teston, 217 Ga. App. at 830, 459 S.E.2d at 454.

To that end, public agents can only be sued in their personal capacities if they (1) negligently performed a ministerial duty or **(2) acted with actual malice or actual intent to cause injury while performing a discretionary function**. Id. In Merrow v. Hawkins, the Georgia Supreme Court distinguished between "malice" and "actual malice," concluding that the requirement that a plaintiff show actual malice "exclude[s] any liability for injuries and damages if officers and employees act with implied malice in the performance of their official functions." Id. Mere proof of ill will, anger, frustration, or irritation is insufficient to establish actual malice. Woodward v. Gray, 241 Ga. App. 847, 851 (2000).

Rather, the plaintiff must show that the public officer acted with the deliberate intent to commit a wrongful act or with the deliberate intent to harm the plaintiff. Anderson v. Cobb, 258 Ga. App. 159, 160 (2002); see Kidd v. Coates, 271 Ga. 33, 33-34 (1999) (defining "actual intent to cause injury" as "an actual intent to cause harm to the plaintiff encompasses concept of willfulness, malice, or corruption in the context of official immunity").

1. **Defendant[s] Are Not Entitled to Qualified Immunity As The Continuing and Ongoing Prosecution Qualifies as Malicious, Reckless**

## **and Clearly Incompetent Under Malley v. Briggs, 475 U.S. 335, 341 (1986) as the Shooting Victim Noticed the Officers of the Plaintiffs' Innocence Prior to the Arrest of Green.**

Defendant claims he is entitled to qualified immunity because he was acting within discretionary duties and did not violate the Plaintiff's constitutional rights.

Qualified immunity shields government officials executing discretionary responsibilities from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Courson v. McMillian, 939 F. 2d 1479, 1487 (11th Cir. 1991), citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law to be decided by the Court. The test for qualified immunity is one of "objective-Reasonableness" in evaluating the conduct of the government official claiming its protection. "[A]ll but the plainly incompetent or those who knowingly violate the law" find protection in qualified immunity. Id., citing Malley v. Briggs, 475 U.S. 335, 341 (1986).

In Rich v. Dollar, 841 F .2d 1558 (11th Cir. 1988), the Eleventh Circuit adopted a two part analysis for assessing the qualified immunity defense. First, the defendant public official must prove that he acted within the scope of his discretionary authority when the challenged conduct occurred. If the Defendant satisfies this part, the burden shifts to the Plaintiff to show that the defendant

18

public official's conduct violated clearly established law. Id. at 1563-64. In general, the Eleventh Circuit allows a broad and expansive scope of protection afforded by qualified immunity.

"That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities. . . **Unless a government's agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit.**

Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity. Lassiter v. Alabama A & M Univ., Bd of Trustees, 28 F .3d 1146, 1149 (11th Cir. 1994)(en banc) (citations and footnotes omitted). In Lassiter, the Eleventh Circuit expounded that for a law to be clearly established in the qualified immunity context, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances."* Id. at 1150 (emphasis in original)."

The parties agree that Officer JACKSON was acting within the scope of her authority when she arrested and prosecuted Plaintiff. The evidence proffered here

by the Plaintiff shows that Defendant JACKSON is not entitled to Qualified
Immunity because there was no arguable probable cause and the Plaintiff
successfully overcame the STATE's case in chief.

The Plaintiff notes under the analysis of Pruitt that Arguable Probable Cause
does not exist in this case.  Pruitt v Gillespie, 2015  WL 435031 at 11 [SD Ala. Feb
3rd 2015].

On October 30, 2019, Officer Jackson contacted Darrius Battle. During that
conversation Darrius informed Defendant Jackson that he had been trying to get in
touch with him.  Darrius told Defendant Jackson that James Green, Tyress Mathis
and Jaquaris Gatlin were not the guys who shoot him.

Darrius told Jackson that he had picked out the wrong guys.  Darrius told
Jackson that he had been at the Sand Dunes last week and he had seen the guys that
shot him.  After Darrius told Defendant Jackson that the Plaintiffs were not the
guys who had shot him; Jackson wrote in his file, "This case will remain active."

**Here, the alleged victim told the arresting officers that the plaintiffs were**
**not responsible for his shooting   his knowledge being imputed to**
**the STATE pursuant to Taylor v. State, 44 App. 64. 160 SE 667 & Womack**
**v. State 260 Ga 21, 389 S.E. 2d 240 (1990) which verifies that the [victim**
**identification of the perpetrator] imputes to the STATE.**

Therefore, the subsequent arrest [of Plaintiff Green Specifically] at the hands of officer Jackson after having been informed by the victim that none of the plaintiffs were involved in his shooting  means that the arrest was unlawful, and the ongoing prosecution of all Plaintiffs was clearly malicious as the defendants were identified as innocent by the victim and the Plaintiffs have successfully overcome the state charges.

Even the idea of arguable probable cause is absent because the defendants were aware at the moment that the same Victim who gave them probable cause to issue the warrant recanted his statement and asserted the innocence of the Plaintiffs. And at that moment, the Defendants should have released the Plaintiffs and ended their prosecution because the case itself had turned around.

Therefore, the actions of the officers can fall either one of two categories: either the arrest and ongoing prosecution of Greene was malicious or the officers themselves were clearly incompetent. In either case, immunity is destroyed. **Malley v. Briggs, 475 U.S. 335, 341 (1986)**

a. **The False Arrest Claim / False Imprisonment Claim  is Valid under OCGA 51-7-1 Against All Named Defendants**

Under Georgia law, the tort of false imprisonment, sometimes called false arrest, happens when there is an arrest or "unlawful detention" of someone, for any length of time, where that person is deprived of his physical liberty. The existence

of probable cause is not a complete defense in a false-imprisonment case because, even if probable cause to believe a crime has been committed exists, a warrantless arrest would still be illegal unless it was accomplished under one of the "exigent" circumstances set out by law.

The present complaint provides specified facts for the Court that note that the Plaintiffs was held without reasonable suspicion and / or even arguable probable cause.

On October 30, 2019, Officer Jackson contacted Darrius Battle. During that conversation Darrius informed Defendant Jackson that he had been trying to get in touch with him.  Darrius told Defendant Jackson that James Green, Tyress Mathis and Jaquaris Gatlin were not the guys who shoot him.

Darrius told Jackson that he had picked out the wrong guys.  Darrius told Jackson that he had been at the Sand Dunes last week and he had seen the guys that shot him.  After Darrius told Defendant Jackson that the Plaintiffs were not the guys who had shot him; Jackson wrote in his file, "This case will remain active."

**Here, the alleged victim told the arresting officers that the plaintiffs were not responsible for his shooting   his knowledge being imputed to the STATE pursuant to Taylor v. State, 44 App. 64. 160 SE 667 & Womack v. State 260 Ga 21, 389 S.E. 2d 240 (1990) which verifies that the [victim identification of the perpetrator] imputes to the STATE.**

Therefore, the subsequent arrest [of Plaintiff Green Specifically] at the hands of officer Jackson after having been informed by the victim that none of the plaintiffs were involved in his shooting  means that the arrest was unlawful, and the ongoing prosecution of all Plaintiffs was clearly malicious as the defendants were identified as innocent by the victim and the Plaintiffs have successfully overcome the state charges.

Even the idea of arguable probable cause is absent within this case because the defendants were aware at the moment that the same Victim who gave them probable cause to issue the warrant recanted his statement and asserted the innocence of the Plaintiffs. And at that moment, the Defendants should have released the Plaintiffs and ended their prosecution because the case itself had turned around.

Therefore, the actions of the officers can fall either one of two categories: either the arrest and ongoing prosecution of Greene was malicious or the officers themselves were clearly incompetent. In either case, immunity is destroyed.

**Malley v. Briggs, 475 U.S. 335, 341 (1986)**

Moreover, the Plaintiff has plead that the Police Officers were aware that they were not involved in the shooting of the victim as the victim themselves provided testimony to the Police verifying the innocence of the Plaintiffs.

Therefore, the Court should not dismiss the element of the claim under count 1 as there are well plead allegations pursuant to caselaw and the statute. Finally, if the Court determines that the pleading lacks in any regard, the Court should allow for a re-pleading.

### i.   The False Imprisonment Claim is Valid under OCGA 51-7-1 Against All Named Defendants

The act of false imprisonment may arise out of words, acts, gestures, which create a reasonable apprehension that force will be used if a person does not do as told. It is enough if these elements of restraint impact the will of the person threatened, and result in a reasonable fear of personal difficulty or personal injuries. An example is where a store manager stations an off-duty police officer outside his office door while the plaintiff is inside being interrogated. In that situation, the plaintiff has a reasonable fear that she is not free to leave without experiencing personal difficulties.

Other situations where courts have recognized viable false imprisonment claims include: where the manager of a restaurant directed security to detain a customer suspected of not paying his bill (but who did pay the bill) who was detained in his car upon leaving the parking lot; where a deputy caused the plaintiff to be arrested so that the deputy himself could collect a civil debt; where a police officer placed the plaintiff in handcuffs, transported him to the city police department, and placed

him in a cell under an arrest warrant that was never signed by a judge; where a deputy arrested the plaintiff under a defective bench warrant issued by a Recorders' Court judge; where lawyer was arrested for merely observing officers questioning young black men from across the street with arms folded in disapproving manner; the officers' assertion that the lawyer created a distraction which obstructed a traffic stop was characterized by the court as "preposterous."

Where the Georgia-law claim of false imprisonment exists, a federal-law claim for false arrest sometimes exists as well. The Fourth Amendment gives an individual the right to be free from "unreasonable searches and seizures." An arrest is a seizure. To determine whether an arrest is reasonable, courts will examine if there is probable cause for the arrest. Probable cause exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime. If an officer makes a mistake of fact, probable cause may still exist if the mistake is objectively reasonable and if it was objectively reasonable to rely on the mistake in calculating probable cause. An officer who arrests an individual without probable cause violates the Fourth Amendment. The existence of probable cause at the time of arrest, however, constitutes an absolute bar to a 42 U.S.C. § 1983 action for false arrest.

A false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment's protection against deprivations of liberty without due process of law. When a police officer lacks probable cause to make an arrest, a plaintiff can make a false imprisonment claim based on the detention pursuant to the arrest. This type of claim is grounded in the Fourth Amendment's guarantee against unreasonable seizures. To state a false imprisonment claim, a plaintiff must establish: (1) the common law elements for false imprisonment — (a) intent to confine; (b) acts resulting in confinement; and (c) consciousness of the plaintiff of confinement or resulting harm; and (2) the imprisonment resulted in a violation of a plaintiff's Fourth Amendment rights.

The present complaint provides specified facts for the Court that note that the Plaintiff was held without reasonable suspicion and / or even arguable probable cause.

Darrius told Jackson that he had picked out the wrong guys.  Darrius told Jackson that he had been at the Sand Dunes last week and he had seen the guys that shot him.  After Darrius told Defendant Jackson that the Plaintiffs were not the guys who had shot him; Jackson wrote in his file, "This case will remain active."

**Here, the alleged victim told the arresting officers that the plaintiffs were not responsible for his shooting his knowledge being imputed to the STATE pursuant to Taylor v. State, 44 App. 64. 160 SE 667 & Womack**

**v. State 260 Ga 21, 389 S.E. 2d 240 (1990) which verifies that the [victim identification of the perpetrator] imputes to the STATE.**

Therefore, the subsequent arrest [of Plaintiff Green Specifically] at the hands of officer Jackson after having been informed by the victim that none of the plaintiffs were involved in his shooting  means that the arrest was unlawful, and the ongoing prosecution of all Plaintiffs was clearly malicious as the defendants were identified as innocent by the victim and the Plaintiffs have successfully overcome the state charges.

Even the idea of arguable probable cause is absent within this case because the defendants were aware at the moment that the same Victim who gave them probable cause to issue the warrant recanted his statement and asserted the innocence of the Plaintiffs. And at that moment, the Defendants should have released the Plaintiffs and ended their prosecution because the case itself had turned around.

Therefore, the actions of the officers can fall either one of two categories: either the arrest and ongoing prosecution of Greene was malicious or the officers themselves were clearly incompetent. In either case, immunity is destroyed.

**Malley v. Briggs, 475 U.S. 335, 341 (1986)**

Moreover, the Plaintiff has plead that the Police Officers were aware that they were not involved in the shooting of the victim as the victim themselves provided testimony to the Police verifying the innocence of the Plaintiffs.

Therefore, the Court should not dismiss the element of the claim under count 1 as there are well plead allegations pursuant to caselaw and the statute.  Finally, if the Court determines that the pleading lacks in any regard, the Court should allow for a re-pleading.

**b.  The Plaintiffs' Equal Protection Claim Is Dismissed.**

**The Plaintiffs assert that their Claims for Equal Protection violations should be dismissed.**

**c.  <u>Defendants Violated Clearly Established Law In Arresting Defendants  who Committed No Crime</u>**

i.  <u>Malicious Prosecution Analysis</u>

Under Georgia law, a criminal prosecution that is pursued maliciously and without probable cause can create a civil cause of action. To state a claim for malicious prosecution, a plaintiff must show (1) prosecution for a criminal offense; (2) instigated without probable cause; (3) with malice; (4) under a valid warrant, accusation or summons; (5) which has terminated favorably to the plaintiff; and (6) has damaged the plaintiff. Malice may be inferred from a lack of probable cause.

A malicious prosecution may also violate the Fourth Amendment and thus create a claim under 42 U.S.C. § 1983. To establish a malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of Georgia's common law tort of malicious prosecution. For purposes of a § 1983 malicious prosecution claim, the elements under federal law include: (1) prosecution for a criminal offense; (2) instigated without probable cause; (3) with malice; (4) under a valid warrant, accusation or summons; (5) which has terminated favorably to the plaintiff; and (6) has damaged the plaintiff.

In the immediate case at BAR, all elements have been fulfilled for both the State Based claim of malicious prosecution and the Federal Claim of Malicious Prosecution.  The Plaintiff has presented a multitude of evidentiary issues relating the Defendant's lack of [even] arguable probable cause and the Plaintiff was harmed by the actions of the Government Agency and the Individual Defendant JACKSON.

On October 30, 2019, Officer Jackson contacted Darrius Battle. During that conversation Darrius informed Defendant Jackson that he had been trying to get in touch with him.  Darrius told Defendant Jackson that James Green, Tyress Mathis and Jaquaris Gatlin were not the guys who shoot him.

Darrius told Jackson that he had picked out the wrong guys.  Darrius told Jackson that he had been at the Sand Dunes last week and he had seen the guys that shot him.  After Darrius told Defendant Jackson that the Plaintiffs were not the guys who had shot him; Jackson wrote in his file, "This case will remain active."

**Here, the alleged victim told the arresting officers that the plaintiffs were not responsible for his shooting his knowledge being imputed to the STATE pursuant to Taylor v. State, 44 App. 64. 160 SE 667 & Womack v. State 260 Ga 21, 389 S.E. 2d 240 (1990) which verifies that the [victim identification of the perpetrator] imputes to the STATE.**

Therefore, the subsequent arrest [of Plaintiff Green Specifically] at the hands of officer Jackson after having been informed by the victim that none of the plaintiffs were involved in his shooting  means that the arrest was unlawful, and the ongoing prosecution of all Plaintiffs was clearly malicious as the defendants were identified as innocent by the victim and the Plaintiffs have successfully overcome the state charges.

Even the idea of arguable probable cause is absent within this case because the defendants were aware at the moment that the same Victim who gave them probable cause to issue the warrant recanted his statement and asserted the innocence of the Plaintiffs. And at that moment, the Defendants should have

released the Plaintiffs and ended their prosecution because the case itself had

turned around.

Therefore, the actions of the officers can fall either one of two categories: either

the arrest and ongoing prosecution of Greene was malicious or the officers

themselves were clearly incompetent. In either case, immunity is destroyed.

**Malley v. Briggs, 475 U.S. 335, 341 (1986)**

C. **All State Claims Based Upon Intentional Torts Should Remain**

   **Including Infliction of Emotional Distress, et al**

The Restatement of Law of Torts discloses the following: "For harm resulting to

a third person from the tortious conduct of another, a person is liable if he (a)

orders or induces such conduct, knowing of the conditions under which the act is

done or intending the consequences which ensue, or (b) knows that the other's

conduct constitutes a breach of duty and gives substantial assistance or

encouragement to the other so to conduct himself, or (c) gives substantial

assistance to the other in accomplishing a tortious result and his own conduct,

separately considered, constitutes a breach of duty to the duty to the third person."

Restatement, Torts, § 876 (1939).  *Madden v. Fulton County*, 102 Ga. App. 19, 22-

21 (Ga. Ct. App. 1960).

### III.    <u>Conclusion</u>

Therefore, the Court should not dismiss the cause of action as the Plaintiff's claims raise valid material issues and should be allowed to move forward into discovery.  The Pleading standards have been met under the Existing Standards and Caselaw and Immunity in the immediate case is no precursor for dismissal.

Therefore, The Plaintiff requests:

A. That the Court deny the motion to dismiss on all counts;

B. That the Court allow for additional pages; and

C. That the Court allow the Plaintiffs reasonable time to amend the complaint with exhibits should the Court determine that a redrafting is necessary.

Respectfully submitted this October 30, 2021,

/<u>ss</u>/<u>Kamau K. Mason</u>
Kamau K. Mason, Esq. for Plaintiff
BAR NO.: 823438

Law Offices of Kamau K. Mason & Associates
3036 Woodrow Drive
Lithonia, GA 30038
P: 678.464.4618
F: 678.526.5310
kkmason@yahoo.com

/<u>ss</u>/<u>C. Victor Long</u>
C Victor Long for Plaintiff
BAR NO. 456950

Office of C. Victor Long
PO Box 310928
Atlanta, GA 30331
<u>attjud@bellsouth.net</u>

## <u>CERTIFICATE OF COMPLIANCE</u>

This document certifies that the above response complies with the Federal Rules of Civil Procedure.

The Document Font size is 14 Point Times New Roman.

A proper Motion for Additional Pages to file in excess of 25 pages is attached herein.

Respectfully submitted this October 30, 2021,

/<u>ss/Kamau K. Mason</u>
Kamau K. Mason, Esq. for Plaintiff
BAR NO.: 823438

Law Offices of Kamau K. Mason & Associates
3036 Woodrow Drive
Lithonia, GA 30038
P: 678.464.4618
F: 678.526.5310
kkmason@yahoo.com

/<u>ss/C. Victor Long</u>
C Victor Long for Plaintiff
BAR NO. 456950

Office of C. Victor Long
PO Box 310928
Atlanta, GA 30331
<u>attjud@bellsouth.net</u>