IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| JAMES ANTWOHN GREEN and ) <br> TYRESS DONTAE MATHIS, ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> OFFICER LATAEVIAS JACKSON, in his ) <br> individual and official capacities, et al. ) <br> ) <br>     Defendants. ) | CIVIL ACTION <br> NO. 1:21-cv-00168-LAG |

**REPLY BRIEF IN SUPPORT OF DEFENDANT JACKSON'S
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

COMES NOW defendant Lataevia Jackson and, pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.3, files this reply brief in support of her motion to dismiss plaintiffs' complaint.

**I.  ARGUMENT AND CITATION TO AUTHORITY**

Throughout their response brief, plaintiffs conflate federal and state law standards, including the doctrines of qualified immunity and official immunity. But ultimately, plaintiffs have failed to show that probable cause did not exist to for Jackson to obtain arrest warrants for plaintiffs based on the victim's identification of plaintiffs as the criminal perpetrators, which is not overcome by the victim's shaky repudiation months later that he refused to put on the record.

**A.  Plaintiffs' Complaint Constitutes a Shotgun Pleading**

Plaintiffs merely argue that the "Complaint contained factual allegations, noted dates, times and names of each actors who hold an element of responsibility and liability for the torts…" as their response to Jackson's contention that the complaint constitutes a shotgun pleading. (Doc. 14 at 11.)  They make no effort to address the specific shortcomings set forth in Jackson's moving

brief. Ultimately, plaintiffs' complaint is a quintessential "shotgun" pleading for the reasons stated in Jackson's motion to dismiss, and it must be dismissed in its entirety.

**B.     Plaintiffs' Federal Claims Fail as a Matter of Law[1]**

       **1. No Constitutional Violation**

As an initial matter, plaintiffs make no response to Jackson's argument that the issuance of a warrant constitutes legal process; thus, plaintiffs' claims are ones of malicious prosecution, not false arrest.[2] But the existence of probable cause for the warrant would serve to overcome any claim for false arrest or malicious prosecution.[3]

In an attempt to challenge the existence of probable cause for their arrests, plaintiffs argue the victim's statements to defendant Jackson on October 30, 2019, served to put Jackson on notice that plaintiffs were innocent. This argument fails on the merits. First, it would appear plaintiffs concede that the victim's initial allegations that plaintiffs shot him in the head established probable cause to believe that plaintiffs committed a crime. (*See* Doc. 14 at 21 ("[T]he same Victim who gave them probable cause to issue the warrant…").) "Generally, an officer is entitled to rely on a victim's criminal complaint as support for probable cause." *Moreno v. Turner*, 572 F. App'x

---

[1] Plaintiffs concede they have failed to state a claim for violation of the Equal Protection Clause. (Doc. 14 at 29.) Such claims should be dismissed with prejudice.

[2] Furthermore, there is no explicit allegation that Jackson arrested plaintiff Mathis, only that Mathis turned himself into the police. The complaint does explicitly state that Moore arrested Green, not Jackson. Thus, any false arrest claim against Jackson fails as a matter of law.

[3] *Myers v. Bowman*, 713 F.3d 1319, 1326 (11th Cir. 2013) (existence of probable cause constitutes absolute bar to false arrest claims); *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010) (existence of probable cause defeats § 1983 malicious prosecution claim). Probable cause exists where an arrest is objectively reasonable under the circumstances. *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is committing or is about to commit an offense." *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003).

852, 856 (11th Cir. 2014) (quoting *Rankin v. Evans*, 133 F.3d 1425, 1441 (11th Cir. 1998)). *See also*, *Gramenos v. Jewel Cos.*, 797 F.2d 432, 439 (7th Cir. 1986) ("When an officer has received his information from some person—normally the putative victim or an eye witness—who it seems reasonable to believe is telling the truth, he has probable cause.").[4]

Even when faced with conflicting versions of events, "arresting officers, in deciding whether probable cause exists, are not required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed." *Dahl v. Holley*, 312 F.3d 1228, 1234 (11th Cir. 2002). "[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." *Id.* (quoting *Craig v. Singletary*, 127 F.3d 1030, 1042 (11th Cir. 1997)). Here, the victim immediately identified plaintiffs as the criminal perpetrators who shot him. (Doc. 1-1 at p. 12, ¶¶ 18-22, p. 42.) Only when Jackson reached out to the victim to discuss a photo lineup, the victim stated that he picked out the wrong people. (Doc. 1-1 at p. 47.) He offered no credible reason as to why he was certain at that time he had identified the wrong people other than to say, "I just know." (*Id.*) Jackson's immediate response was to ask if the victim had been paid off or threatened. (*Id.*) Jackson then asked the victim to come to the law enforcement center the following day to put his new story on the record, to which the victim agreed. (*Id.*) Jackson waited for the victim to come in the next day, but the victim never did. (*Id.*) Based on the totality of the circumstances, there was certainly a sufficient basis to still believe plaintiffs were the perpetrators despite the victim's odd

---

[4] Notably, per the complaint allegations, the victim identified plaintiffs as the criminal perpetrators on August 22, 2019; arrest warrants for plaintiffs were sworn out on August 27, 2019; and plaintiff Mathis turned himself in to police that same day. The victim did not change his story until October 30, 2019. Such evidence, even if dispositive of Mathis's innocence (which it was not), does not render the earlier arrest warrant unlawful.

recantation that he refused to put on the record.[5] Thus, plaintiffs' Fourth Amendment claims for false arrest and malicious prosecution fail as a matter of law.[6]

Plaintiffs make no substantive argument in response to Jackson's brief as it pertains to the federal false imprisonment claim. Specifically, they fail to address the principle that "[t]he Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished 'without due process of law.'" *Baker v. McCollan*, 443 U.S. 137, 142 (1979).  Indeed, the Supreme Court in *Baker* noted, "[g]iven the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent." *Id.* Under that same line of reasoning, nor would Jackson be required by the Constitution to perform an error-free investigation of such a claim. *Id.* For the reasons set forth above and in Jackson's moving brief, plaintiffs' complaint allegations are not sufficient to state a Fourteenth Amendment claim for false imprisonment.

### 2. *No Violation of Clearly Established Law*

In their response brief, plaintiffs cite to three sources of authority to argue that Jackson violated clearly established law.[7]  (Doc. 14 at 28.)  But none serve to establish "fair and clear

---

[5] The decision to leave the case open when the victim refused to put his recantation on the record does not rise to the level of malice given the totality of the circumstances presented in the allegations of plaintiffs' complaint. Thus, plaintiffs' malicious prosecution claims fail given the existence of probable cause *and* lack of malice.

[6] This is bolstered by the warrant dismissal in which the District Attorney's Office noted that there was sufficient evidence to issue a warrant and the victim has expressed no interest in further prosecution. (Doc. 1-1 at 48.)

[7] In a separate section of their response brief, plaintiffs also cite to *Pruitt v. Gillespie*, 2015 WL 435031 at 11 (S.D. Ala., Feb. 3, 2015) to suggest that arguable probable cause did not exist for their arrest and detention. But a district court order is not sufficient to create clearly established

warning" to a reasonable person that his actions were unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 746 (2002); *see also Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)) (noting that for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate").

      First, plaintiffs cite to *Taylor v. State*, 44 Ga. App. 64 (1931), which fails on various grounds to serve as clearly established law. As a threshold matter, only decisions of the United States Supreme Court, the Eleventh Circuit Court of Appeals, or the Georgia Supreme Court can create clearly established law for qualified immunity purposes. *Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821, 823 n.4 (11th Cir. 1997) (*en banc*). As *Taylor* is an opinion from the Georgia Court of Appeals, it does not create clearly established law for qualified immunity purposes. Furthermore, *Taylor* merely analyzes when the statute of limitations begins to run in a criminal context based on knowledge of the offense or offender. This has no relevance to the instant matter at bar, nor would it serve to make it obvious to Jackson that her actions violated federal law. *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000). The second case plaintiffs cite to, *Womack v. State*, 260 Ga. 21 (1990), fails to create clearly established law as it stands for the same proposition as *Taylor*.

      Separately, plaintiffs cite to *Malley v. Briggs*, 475 U.S. 335 (1986) for the proposition that "either the arrest and ongoing prosecution of Green was malicious or the officers themselves were clearly incompetent." (Doc. 14 at 31.) But the facts in *Malley* are not remotely similar to the instant case. And the ultimate holding establishes generally that a state trooper, while not entitled to absolute immunity, would be entitled to qualified immunity under an objective reasonableness

---

law as it relates to qualified immunity. Furthermore, the case is not analogous to the instant matter and would not serve to put Jackson on notice that her actions were unconstitutional.

5

standard under which immunity would be lost only where a warrant application lacked indicia of probable cause as to render its existence unreasonable. This case is not sufficient to serve as clearly established law that Jackson's actions were unlawful.[8]

In sum, no clearly established authority gave Jackson "fair and clear warning" that she was violating plaintiffs' constitutional rights when she relied upon the victim's clear identification of plaintiffs as the perpetrators to obtain arrest warrants for plaintiffs. Likewise, no clearly established authority gave Jackson "fair and clear warning" that she was violating plaintiff Green's constitutional rights when she did not rescind the arrest warrant for him even though the victim stated Green was not the guy, but then refused to come into the police station to discuss further and put his statement on the record. Plaintiffs have not and cannot point to any materially similar decision of the United States Supreme Court, the Eleventh Circuit Court of Appeals, or the Georgia Supreme Court that placed "beyond debate" the conclusion that Jackson violated their rights. Accordingly, plaintiffs' federal claims against Jackson are barred on the ground of qualified immunity.

### 3.  *No Factual Allegations to Support* **Monell** *Liability*

Despite failing to raise such a claim in their complaint, plaintiffs now argue that they have alleged sufficient facts to support a *Monell* claim against Jackson in her official capacity, which is

---

[8] Time and again, the Supreme Court has made plain that a right is not "clearly established" unless it is "defined with specificity." *See Rivas-Villegas v. Cortescluna*, 595 U.S. _____ (2021) (per curiam); *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019); *Kisela v. Hughes*, 138 S. Ct. 1148, 1152–53 (2018); *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018). In *White v. Pauly*, the Supreme Court expressed that it "has issued a number of opinions reversing federal courts in qualified immunity cases," finding that "it is again necessary to reiterate the longstanding principles that 'clearly established law' should not be defined 'at a high level of generality.'" 137 S. Ct. 548, 551-52 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). More recently, the Supreme Court has reiterated that it has "repeatedly told courts … not to define clearly established law at a high level of generality." *Kisela*, 138 S. Ct. at 1152 (internal quotation marks omitted).

in essence a claim brought against the City. *See Owens v. Fulton Cnty.*, 877 F.2d 947, 951 n.5 (11th Cir. 1989) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

The Supreme Court "has placed strict limitations on municipal liability under § 1983." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003). Section 1983 does not permit vicarious liability. *Keith v. DeKalb Cnty. Ga.*, 749 F.3d 1034, 1047 (11th Cir. 2014). Rather, a local government may be held liable under § 1983 *only* when a constitutional violation was inflicted pursuant to the government's policy or custom.[9] *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978).

To establish their Section 1983 claims against the City, plaintiffs must allege and prove that city policies existed which were the "moving force" behind the constitutional violations they allegedly suffered. *Id.* "A plaintiff . . . has two methods by which to establish a county's policy: identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech*, 355 F.3d at 1329.

As the Eleventh Circuit observed in *Grech*, a city "rarely will have an officially-adopted policy of permitting a particular constitutional violation," and most plaintiffs will thus have to "show that the [city] has a custom or practice of permitting it and that the custom or practice is the moving force behind the constitutional violation." *Grech*, 355 F.3d at 1329 (quotations omitted). A plaintiff can show a custom or practice by demonstrating "a pattern of similar constitutional violations" that evinces a practice "so pervasive as to be the functional equivalent of a formal policy." *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011); *Grech*, 335 F.3d at 1330

---

[9] Jackson does not concede that plaintiffs have sufficiently alleged an underlying constitutional violation.

7

n.6 (internal citations omitted). A "pattern" of constitutional violations necessarily requires the plaintiff to allege and prove prior violations—"proof of a single incident cannot suffice to impose liability under *Monell*." *Grech*, 335 F.3d at 1330 n.6 (quoting *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality)).

Plaintiffs have failed to allege a City policy under either method. Indeed, plaintiffs neither allege facts to support that the City had an officially promulgated City policy allowing for false arrest, false imprisonment, or malicious prosecution of its citizens, nor do plaintiffs allege facts to support that the City has an unofficial custom or practice of falsely arresting or maliciously prosecuting its citizens. *See Grech*, 355 F.3d at 1329. Tellingly, plaintiffs fail to raise a single factual allegation against the City in their entire complaint. Instead, plaintiffs argue they should be allowed to participate in discovery to determine whether Jackson acted in adherence to an unofficial City policy. (Doc. 14 at 16.) But the discovery process should not be a fishing expedition to learn if the speculative, conclusory allegations have any basis in fact. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2009) ("Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Conclusory allegations, without more, are not well-pleaded facts; they fail to apprise Jackson, and this Court, of the factual basis of plaintiffs' claims, *see Franklin v. Curry*, 738 F.3d 1246, 1250-51 (11th Cir. 2013) (per curiam), and they fail to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. *See also United States v. Students Challenging Regulatory Ag. Proc.*, 412 U.S. 669 (1973) ("Pleadings must be something more than an ingenious academic exercise in the conceivable."). Accordingly, plaintiffs have failed to state a § 1983 claim against the City, and the Court should dismiss any claim against Jackson in her official capacity. *See Harvey v. City of Stuart*, 296 Fed. App'x. 824, 826 (11th Cir. 2008) (affirming dismissal of suit against municipality for failure to identify municipal policy or

custom).

## C. The Individual Officers Are Entitled to Official Immunity as to Plaintiffs' State Law Claim[10]

Other than reciting the legal standard for official immunity, repetitively and somewhat erroneously, plaintiffs fail to set forth any argument as to why Jackson is not entitled to official immunity for the state law claims. Specifically, plaintiffs set forth no facts or argument to even suggest that Jackson was performing a ministerial act, or that she acted with actual malice or an intent to injure plaintiffs in performing a discretionary act. Instead, plaintiffs appear to argue that discovery is necessary to show this. (Doc. 14 at 12.) But as stated above, this runs afoul of the pleading standard. Plaintiffs merely allege, in conclusory fashion, that because their arrests and subsequent detainment were unlawful, Jackson acted with actual malice. But such conclusory, bare allegations of malice are not sufficient. Thus, Jackson is entitled to official immunity and plaintiffs' state law claims are barred. Alternatively, for the reasons set forth in Jackson's moving brief and above, probable cause existed for the arrest warrants. Thus, plaintiffs' state law claims for false imprisonment and malicious prosecution fail on the merits.[11]

## II. CONCLUSION

Based on the foregoing, Jackson respectfully requests this Court to grant her motion to dismiss plaintiffs' complaint.

Respectfully submitted, this 15th day of November, 2021.

**FREEMAN MATHIS & GARY, LLP**

---

[10] Inexplicably, plaintiffs reference sovereign immunity in their response brief although no state law claims against the City were pled in the complaint. (Doc. 14 at 14.) However, a further reading of the brief, demonstrates that plaintiffs appear to be referring to official immunity for state law claims and *Monell* liability for plaintiffs' federal law claims. (*Id.* at 14-16.)

[11] Plaintiffs also set forth no competent argument as to why their intentional infliction of emotional distress claim does not fail. Instead, they cite to authority governing potential liability for the acts of others, which has no relevance or application to the current case. (Doc. 14 at 31.)

*/s/ Sara E. Brochstein*
Sun S. Choy
Georgia Bar No. 025148
schoy@fmglaw.com
Sara E. Brochstein
Georgia Bar No. 446366
sbrochstein@fmglaw.com

*Attorneys for defendant Jackson*

100 Galleria Parkway, Suite 1600
Atlanta, GA  30339-5948
(770) 818-0000 (Telephone)
(770) 937-9960 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically submitted the foregoing **REPLY BRIEF IN SUPPORT OF DEFENDANT JACKSON'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants:

Kamau K. Mason
LAW OFFICES OF KAMAU K. MASON & ASSOCIATES
3036 Woodrow Drive
Lithonia, GA 30038

C. Victor Long
P.O. Box 310928
Atlanta, Georgia 30331

Lance Simon, Assistant U.S. Attorney
Huiju Jeon, Assistant U.S. Attorney
Peter D. Leary
Acting United States Attorney
United States Attorney's Office
P.O. Box 1702
Macon, GA 31202

This 15th day of November, 2021.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Sara E. Brochstein*
Sara E. Brochstein
Georgia Bar No. 446366
sbrochstein@fmglaw.com

100 Galleria Parkway, Suite 1600
Atlanta, Georgia  30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)