IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| JAMES ANTWOHN GREEN and TYRESS DONTAE MATHIS, | : : : |
| Plaintiffs, | : : |
| v. | :    CASE NO.: 1:21-CV-168 (LAG) |
| OFFICER LATAEVIA S. JACKSON, in her individual and official capacities, OFFICER THOMAS J. MOORE, in his individual and official capacities, and JOHN DOES (1-5), unknown Albany Police Officers, | : : : : : : : : |
| Defendants. | : : |

# ORDER

Before the Court are Plaintiffs' Motion for Additional Pages for Response (Doc. 16), Defendant Moore's Supplemental Motion to Dismiss (Doc. 12), Plaintiffs' Notice of Dismissal of Defendant Thomas Moore (Doc. 18), and Defendants' Motion to Dismiss (Doc. 4). For the reasons stated below, Plaintiffs' Motion for Additional Pages for Response and Defendants' Motion to Dismiss are **GRANTED**. Defendant Moore's Supplemental Motion to Dismiss is **DENIED as moot**.

## PROCEDURAL BACKGROUND

On June 22, 2021, Plaintiffs James Antwohn Green and Tyress Dontae Mathis initiated this action in the Superior Court of Dougherty County, Georgia, against City of Albany Police Officers Lataevia S. Jackson, Thomas J. Moore, and five John Doe Officers. (Doc. 1-1 at 5). Defendants Jackson and Moore removed the action to this Court on September 16, 2021. (Doc. 1). Defendants then filed a Motion to Dismiss on September 23, 2021, contending that Plaintiffs' Complaint failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. 4 at 1). Defendant Moore also filed a Supplemental

Motion to Dismiss on October 28, 2021. (Doc. 12). On November 2, 2021, Plaintiffs responded to Defendants' Motion to Dismiss, and Defendants replied on November 15, 2021. (Docs. 15, 17).

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if the complaint alleges enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The plaintiff must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. The Court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs," but the same liberal reading does not apply to legal conclusions. *Anderson v. Wilco Life Ins. Co.*, 17 F.4th 1339, 1344–45 (11th Cir. 2021) (first citing *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010); and then citing *Iqbal*, 556 U.S. at 678). "[A] plaintiff armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678–79. Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

## DISCUSSION

### I.   Motion for Additional Pages for Response

Plaintiffs' Response to Defendants' Motion to Dismiss exceeded the page limit for response briefs under Middle District of Georgia Local Rule 7.4 by five pages, so Plaintiffs submitted a Motion for Additional Pages for Response. (Doc. 16). Plaintiffs' Response certifies that the document's "[f]ont size is 14 [p]oint Times New Roman." (Doc. 15 at 33). The Local Rules, however, do not require a specific font size for court filings, and Plaintiffs' filling possibly would meet the twenty-page limit if a slightly smaller, but still

reasonable, font size was used. Accordingly, Plaintiffs' Motion for Additional Pages for Response (Doc. 16) is **GRANTED**.

## II.   Defendant Moore

On November 22, 2021, Plaintiffs filed a Notice of Dismissal of Defendant Thomas Moore. (Doc. 18). Plaintiffs stated that "having examined the evidence and legal holdings," they decided to "dismiss[] the noted Defendant Thomas Moore with prejudice." (*Id.* at 1). Plaintiffs' claims against Defendant Moore are therefore **DISMISSED with prejudice**, and Defendant Moore's Supplemental Motion to Dismiss (Doc. 12) is **DENIED as moot**.

## III.   John Doe Defendants

As an initial matter, because Plaintiffs have voluntarily dismissed all claims against Defendant Moore with prejudice, the only remaining Defendants are Defendant Jackson and the five John Doe Officers. In federal court, however, "fictious-party pleading is not permitted." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1318 n.4 (11th Cir. 2015) (per curiam) (quoting *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (per curiam)). The Eleventh Circuit has created a limited exception to this rule "when use of a 'John Doe' label is, 'at the very worst, surplusage' because the plaintiff's description of the defendant is 'sufficiently clear to allow service of process.'" *Vielma v. Gruler*, 808 F. App'x 872, 880 (11th Cir. 2020) (per curiam) (quoting *Dean v. Barber*, 951 F.2d 1210, 1215–16 & n.6 (11th Cir. 1992) (other citations omitted)). As the Eleventh Circuit has explained, such a "sue-first-and-sort-out-the-defendant-later approach is not how litigation works in federal court." *Id.* at 881.

The Complaint does not provide any description of the five John Doe Defendants, much less a description clear enough to allow service of process. *See id.* at 880. Although Plaintiffs purport to raise multiple federal and state law claims against the John Doe Officers, the Complaint contains only a single statement about these Defendants: "On November 15, 2019, Officer Thomas J. Moore and John Doe Officers presented themselves at James Green[']s residen[ce] at 301 S. Shadowlawn Dr. Albany, GA." (Doc. 1-1 ¶ 47). Moreover, Plaintiffs do not allege any facts that would set forth a claim against such

3

Defendants. Accordingly, Plaintiffs have failed to state a claim upon which relief can be granted with regard to the John Doe Defendants.

## IV. Defendant Jackson

### A. Factual Background

Plaintiffs' claims arise from their allegedly unlawful incarceration and prosecution in the fall of 2019. (Doc. 1-1 at 4–10).[1] On August 21, 2019, the City of Albany Police Department received an emergency call about a shooting of a man later identified as Darrius Battle. (*Id.* ¶¶ 12–13). Battle, who was "bleeding from the head," was taken to Phoebe Putney Memorial Hospital for treatment. (*Id.* ¶¶ 13, 16). The next day, Battle told Officer Billsby that the men who shot him were in a picture together on Facebook. (*Id.* ¶ 18). Using Officer Billsby's cell phone, Battle pulled a picture up on Kevius Anderson's Facebook page and pointed out three men who he said were in the vehicle during the shooting. (*Id.* ¶¶ 19–20). Battle said that he did not know their names, but the men "were all GD's (Gangsta Disciples)" and Anderson could identify them. (*Id.* ¶ 22, pp. 42).

Defendant Jackson reviewed surveillance footage of the area of the shooting but saw neither Plaintiff in the footage. (*Id.* ¶¶ 14–15). After further investigating pictures on Facebook, Defendant Jackson learned that two of the three men Battle had identified as the perpetrators of the shooting were Plaintiffs Mathis and Green. (*Id.* ¶ 24). Based on Battle's identification, Defendant Jackson obtained arrest warrants for both Plaintiffs and the third individual in the Facebook picture, Jaquaris Gatlin, on August 27, 2019. (*Id.* ¶ 26). Defendant Jackson also prepared BOLO alerts identifying all three men, which local media outlets broadcasted. (*Id.* ¶¶ 27–34).

Plaintiff Mathis' father heard about the arrest warrant for his son and brought Plaintiff Mathis to the Albany Police Department on August 27, 2019. (*Id.* ¶ 36). Defendant Jackson interviewed Plaintiff Mathis, who denied any involvement in the shooting. (*Id.*

---

[1] On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts all facts alleged in Plaintiffs' Complaint (Doc. 1-1) as true. *See Twombly*, 550 U.S. at 570; *Anderson*, 17 F.4th at 1344 (citation omitted).

¶ 37). Plaintiff Mathis told Defendant Jackson that on the day of the shooting, he was home all day except for a short trip to the store. (*Id.*). Plaintiff Mathis said he had his cell phone with him all day and "offered his phone to [Defendant] Jackson to PING his location at the time of the shooting incident," but she declined to do so. (*Id.* ¶¶ 37–39). Plaintiff Mathis does not allege that he was arrested on August 27, 2019, or at any point.[2]

On October 30, 2019, Defendant Jackson contacted Battle about coming to the Albany Law Enforcement Center to participate in a photo line-up. (*Id.* ¶ 40, pp. 47). Battle stated that he had been trying to get in touch with her because he had made a mistake and that Mathis, Green, and Gatlin were not the men who shot him. (*Id.* ¶¶ 40–42). Defendant Jackson asked Battle if he was sure and why he had changed his mind. (*Id.* at 47).[3] Battle responded, "I just know, I was at the Sand Dunes on last week and I saw the guys that shot me, they looked they went to ASU." (*Id.* ¶ 43, pp. 47). Defendant Jackson questioned how he could be certain, to which Battle replied, "Because I know they looked like [j]unkies they look[ed] like Albany State n****s." (*Id.* at 47). Defendant Jackson asked Battle to come to the Law Enforcement Center the next day, October 31, 2019, so that he could give this testimony on camera. (*Id.*). Battle agreed to do so, but he did not show up the next day. (*Id.*). Defendant Jackson noted in the case file, "This case will remain active." (*Id.* ¶ 44, pp. 47).

On November 15, 2019, Defendant Moore and John Doe Officers arrested Plaintiff Green at his home. (*Id.* ¶¶ 47–48). Plaintiff Green was taken to the Dougherty County Jail and was detained for approximately forty days. (*Id.* ¶ 49). On June 23, 2020, the warrants for both Plaintiff Green and Mathis were dismissed. (*Id.* ¶ 52, pp. 48). In dismissing the Complaint, the Dougherty County Assistant District Attorney stated that Plaintiff Green's

---

[2]     While the Complaint contains allegations that Plaintiff Green was arrested, booked, and detained "for approximately 40 days," there are no such allegations related to Plaintiff Mathis. (Doc. 1-1 ¶¶ 48–49).
[3]     When "deciding whether a complaint states a claim upon which relief may be granted, [the Court] normally consider[s] all documents that are attached to the complaint or incorporated into it by reference." *Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Plaintiffs attached several police reports and related documents to their Complaint. (*See* Doc. 1-1 at 41–48). The Court's description of the facts accepts the uncontradicted factual allegations made in the exhibits as true. *See Judd*, 941 F.3d at 514–15 (citing *Saunders v. Duke*, 766 F.3d 1262, 1265–66, 1270 (11th Cir. 2014)).

warrant would not be prosecuted because "[a]lthough there appears to have been sufficient evidence to issue a warrant, there is insufficient evidence to prove the case beyond a reasonable doubt" and "[t]he victim has expressed no interest in further prosecution." (*Id.* at 48).

### B. Federal Law Claims

Plaintiffs raise claims under 42 U.S.C. § 1983 for false arrest, false imprisonment, race discrimination, and malicious prosecution. (Doc. 1-1 ¶¶ 54–75). Section 1983 provides "a private right of action to remedy violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016) (quoting *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012)). To state a claim under § 1983, a plaintiff must allege "that a person acting under color of state law deprived him of a federal right." *Id.* (citation omitted).

### 1. False Arrest, False Imprisonment, and Malicious Prosecution (Counts I, III, and IV)

In Counts I and IV, Plaintiffs claim that they were "detained without probable cause" because they "were noted as not being responsible for the shooting." (Doc. 1-1 ¶¶ 56, 72). They also assert that Defendant Jackson "adopt[ed] false assertions in accusing, detaining[,] and unlawfully arresting the Plaintiffs" and that "Plaintiffs were [f]alsely [i]mprisoned in violation of their 14th Amendment Rights and 4th Amendment Rights." (*Id.* ¶¶ 55, 57, 73).

A § 1983 claim for "false arrest or imprisonment" involves "seizures without legal process, such as warrantless arrests." *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020); *see Wallace v. Kato*, 549 U.S. 384, 388–89 (2007). When an arrest is made pursuant to a warrant but the plaintiff challenges whether probable cause existed for the issuance of the warrant, the plaintiff is better understood as raising a claim for malicious prosecution. *Williams*, 965 F.3d at 1158, 1162; *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016) ("[U]nlike the torts of false arrest and false imprisonment, the tort of malicious prosecution requires a seizure 'pursuant to legal process.' . . . Legal process includes an arrest warrant." (first quoting *Heck v. Humphrey*, 512 U.S. 477, 484 (1994); and then citing

6

*Whiting v. Traylor*, 85 F.3d 581, 585 (11th Cir. 1996))). Plaintiffs allege that arrest warrants were issued for both Plaintiff Mathis and Plaintiff Green and that Plaintiff Green was detained pursuant to said warrants. (Doc. 1-1 ¶¶ 26, 47–49; *see* Doc. 4-1 at 10, 14–15). As such, Plaintiffs have not stated a claim for false arrest or false imprisonment under § 1983.

In Count III, Plaintiffs allege malicious prosecution under § 1983. (Doc. 1-1 ¶¶ 62–70). A § 1983 claim for malicious prosecution arises when the plaintiff, as part of the commencement of a criminal proceeding, has been unlawfully and forcibly restrained in violation of the Fourth Amendment and, due to that seizure, injuries follow as the prosecution continues. *See Grider v. City of Auburn*, 618 F.3d 1240, 1256 (11th Cir. 2010). To state a claim for malicious prosecution, "a plaintiff must prove (1) that the defendant violated his Fourth Amendment right to be free from seizures pursuant to legal process and (2) that the criminal proceedings against him terminated in his favor." *Washington v. Howard*, 25 F.4th 891, 898 (11th Cir. 2022) (quoting *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020)). The elements of the common law tort of prosecution are "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003). To establish a malicious prosecution claim, Plaintiffs must allege that they suffered a "deprivation of liberty" after "legal process" was initiated. *Luke*, 975 F.3d at 1143 (quoting *Laskar v. Hurd*, 972 F.3d 1278, 1292 (11th Cir. 2020)). When the legal process is in the form of a warrant, "the arrest itself may constitute the seizure, or a subsequent arraignment, in which case any post-arraignment deprivations of liberty (such as being bound-over for trial) might satisfy this constitutional requirement." *Love v. Oliver*, 450 F. Supp. 2d 1336, 1340 (N.D. Ga. 2006) (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116–17 (2d Cir. 1995)); *see Williams*, 965 F.3d at 1158 (explaining that malicious prosecution claim may arise from "warrant-based seizures" or "seizures following an arraignment, indictment, or probable-cause hearing" (citations omitted)).

As a threshold matter, Plaintiff Mathis has not alleged that he was arrested or otherwise suffered a deprivation of liberty. Plaintiff Green does allege that he was arrested

and detained. (Doc. 1-1 ¶¶ 48–49). But the malicious prosecution claims of both Mathis and Green fail because Plaintiffs have failed to allege that there was no probable cause at the time Defendant Jackson applied for the warrants and because Plaintiffs do not allege that Defendant Jackson took any affirmative step to continue their prosecution once the victim recanted his identification. As the Eleventh Circuit recently held, the absence of such allegations defeats an action for malicious prosecution in these circumstances. *Washington*, 25 F.4th at 906–08.

First, Plaintiffs concede that there was probable cause when the warrant was issued, stating that "the same Victim who gave them probable cause to issue the warrant recanted his statement." (Doc. 15 at 23). As the Eleventh Circuit stated in *Washington*, "a valid and lawfully obtained warrant shields an officer from liability because the officer's reliance on the magistrate's probable-cause determination renders the officer's actions reasonable." 25 F.4th at 904. As is the case here, where "an officer fully and honestly places evidence before the magistrate, reasonably believing that there is probable cause, those 'procedural steps . . . afford a shield against a Fourth Amendment claim'" *Id.* (quoting *Hupp v. Cook*, 931 F.3d 307, 324 (4th Cir. 2019)). The victim's recantation of the identification occurred some two months after the warrants were issued. "But the discovery of exculpatory evidence after a determination of probable cause does not undermine the validity of a detention based on a judicial order." *Id.* (first citing *Brooks v. City of Winston-Salem*, 85 F.3d 178, 184 (4th Cir. 1996) ("Once a pretrial seizure has been rendered reasonable by virtue of a probable cause determination by a neutral and detached magistrate, the continuing pretrial seizure of a criminal defendant—either by detention or by bond restrictions—is reasonable."); and then citing *Baker v. McCollan*, 443 U.S. 137, 144–46 (1979) (explaining that the warrant requirement and speedy-trial guarantee form the constitutional protections against deprivations of liberty)). Plaintiffs have not established that Defendant Jackson "violated [their] Fourth Amendment right because [they have not alleged] that the warrant was facially invalid or unlawfully obtained." *See id.*

Moreover, the Eleventh Circuit has rejected the argument that an officer violates a suspect's Fourth Amendment rights by "continu[ing] to detain her pursuant to a warrant

8

and to investigate the crime after probable cause had dissipated." *Id.* at 906. "The Fourth Amendment imposes no affirmative duty on an investigator to return to the magistrate after every twist and turn of the investigation." *Id.* (citations omitted). An officer has a duty to disclose exculpatory evidence, and Defendant Jackson did so here by disclosing the information in her report. (*See* Doc. 1-1 ¶¶ 41–44). But, Defendant Jackson did not have "a duty to return to the magistrate after discovering exculpatory evidence." *Washington*, 25 F.4th at 907. Rather, "[t]o succeed on a Fourth Amendment claim for a seizure pursuant to legal process in this context, a plaintiff must prove that the officer took an affirmative act to continue the prosecution because an officer has no duty to 'run after his [warrant].'" *Id.* at 912 (quoting *Page v. Wiple*, 102 Eng. Rep. 618, 619 (1803)). Plaintiffs do not allege that Defendant Jackson took any affirmative steps related to Plaintiffs' arrest or detention such as "intentionally or recklessly mak[ing] material misstatements or omissions in later testimony to continue detention, such as at an arraignment, indictment, or bond hearing." *See id.* at 907 (citing *Manuel v. City of Joliet*, 137 S. Ct. 911, 920 n.8 (2017)). Accordingly, as Plaintiffs concede that there was probable cause at the time the warrants were issued and do not allege that the warrants were invalid or infirm, and as Plaintiffs have not alleged that Defendant Jackson took any affirmative step to continue their prosecution after the issuance of the warrants, they have failed to state a claim for malicious prosecution.

### 2. Race Discrimination

In Count II, Plaintiffs allege that their Fourteenth Amendment right to equal protection of the laws was violated when Defendants decided to "continue the detentions, arrests[,] and prosecutions based upon the race of the named Plaintiffs." (Doc. 1-1 ¶ 59). In their Response to Defendants' Motion to Dismiss, however, Plaintiffs state that "their Claims for Equal Protection violations should be dismissed." (Doc. 15 at 28). Accordingly, Plaintiffs' claims for race discrimination in violation of the Fourteenth Amendment's Equal Protection Clause are dismissed.

### C. State Law Claims

Plaintiffs also raise state law claims for false imprisonment, malicious prosecution, and intentional infliction of emotional distress. (Doc. 1-1 ¶¶ 76–88). Federal district courts

have "supplemental jurisdiction" over a plaintiff's state law claims "that are so related" to a plaintiff's federal claims "that they form part of the same case or controversy" or "arise from a common nucleus of operative facts with a federal claim." 28 U.S.C. § 1367(a); *see Womack v. Carroll County*, 840 F. App'x 404, 407 (11th Cir. 2020) (per curiam) (citing *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006)). Under § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over claims after it has "dismissed all claims over which it has original jurisdiction." Although a district court has discretion over "whether to exercise supplemental jurisdiction," the Eleventh Circuit encourages "dismissal of the remaining state-law claims" when a plaintiff's federal claims are dismissed before trial. *Woods v. Comm'r, Ala. Dep't of Corr.*, 951 F.3d 1288, 1295 (11th Cir. 2020) (citing *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (per curiam)).

Additionally, the statute of limitations period of the remaining state law claims "shall be tolled while the claim[s] are pending and for a period of 30 days after [they are] dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d). Thus, a plaintiff is not prejudiced by dismissal of their state law claims as they have at least thirty days to refile in state court after a district court declines to exercise its supplemental jurisdiction. *See Artis v. District of Columbia*, 138 S. Ct. 594, 598 (2018) (holding that 28 U.S.C. § 1367(d)'s "instruction to 'toll' a state limitations period means to hold it in abeyance, *i.e.*, to stop the clock" in addition to providing a thirty-day grace period to refile in state court). Accordingly, because Plaintiffs' federal law claims have been dismissed, the Court declines to exercise supplemental jurisdiction over their remaining state law claims.

## CONCLUSION

For the reasons above, Plaintiffs' Motion for Additional Pages for Response (Doc. 16) is **GRANTED**, and Defendant Moore's Supplemental Motion to Dismiss (Doc. 12) is **DENIED as moot**. Defendants' Motion to Dismiss (Doc. 4) is **GRANTED**.

Plaintiffs' federal law claims are **DISMISSED with prejudice**, and the state law claims are **DISMISSED without prejudice**.

      **SO ORDERED**, this 1st day of September, 2022.

                                    /s/ Leslie A. Gardner
                                    **LESLIE A. GARDNER, JUDGE**
                                    **UNITED STATES DISTRICT COURT**